KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) | CASE NO. CV 14-433 _____ |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| BONNEVILLE APARTMENTS, ROYAL PROPERTIES MANAGEMENT, LLC, KENT LOTT, INGRID LOTT, and JOSE "DOE" (Last Name Unknown), | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of action against the Defendants Bonneville Apartments, Royal Properties Management LLC, Kent Lott, Ingrid Lott, and Jose "Doe" (Last Name Unknown), states and alleges as follows:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

1

<u>NATURE OF THE ACTION</u>

1. This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief, and damages on the following bases:

    a. <u>Fair Housing Act,</u> 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

        i. Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604;

        ii. Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604;

        iii. Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f);

        iv. Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c);

        v. Inquiry into the nature or severity of a disability in violation of 24 C.F.R. §100.202(c); and

        v. Interference, coercion or intimidation, 42 U.S.C. §3617.

    b. <u>Negligence.</u>

<u>JURISDICTION AND VENUE</u>

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201. The amount in controversy exceeds $75,000 exclusive of interests and costs. Venue is proper in this District in that the claims alleged herein arose in the City of Idaho Falls, County of Bonneville, State of Idaho.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

<u>PARTIES</u>

3. The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 5460 West Franklin Road, Suite M, Boise, Idaho 83705. Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability"). The Plaintiff serves housing consumers through, among other things, housing counseling, education on the fair housing laws and assistance with complaints.

4. The Defendant Bonneville Apartments located at 635 Park Avenue, Idaho Falls, Idaho 83402 (hereinafter "Defendant Bonneville" or "Subject Property") is an unincorporated business doing business in the State of Idaho, and is the real property that is the subject of this proceeding. The Subject Property is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

5. The Defendant Royal Properties Management LLC (hereinafter "Defendant Royal Properties") is the property management company with regards to the Subject Property. The address of record for the Defendant Royal Properties is in Idaho Falls, Idaho.

6. The Defendants Kent Lott (hereinafter "Defendant Kent Lott") and Ingrid Lott (hereinafter "Defendant Ingrid Lott") are the Managers of the Defendant Royal Properties as indicated by the official records of the Idaho Secretary of State's Office and are the owners of record of said Defendant, as indicated by the official records of the County of Bonneville Assessor's Office. The Defendant Lotts' address of record is in Idaho Falls, Idaho.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

3

7.  Jose "Doe" (Last Name Unknown) ("hereinafter "Defendant Doe") is an employee of the Defendant Bonneville and the Defendant Royal Properties, and is a property manager with regards to the Subject Property.

<u>STANDING OF PLAINTIFF</u>

8.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-7 above.

9.  The Plaintiff has suffered damages as the result of the Defendants' actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

10.  The Plaintiff's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.

11.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

12.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

4

additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

13.  As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

<u>GENERAL ALLEGATIONS</u>

14.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-13 above.

15.  On or about the 26th day of June, 2008, the Plaintiff received a complaint from a tenant at the Subject Property that the operators of the Subject Property had denied the tenant a reasonable accommodation for a service animal in violation of the FHA.

16.  On or about the 3rd day of November, 2008, the Plaintiff conducted testing with regards to the Subject Property to determine whether there is evidence to support the complaint it had received.  The testing indicated that the operators of the Subject Property deny reasonable accommodations to disabled persons who require service animals and deny housing to applicants with service animals in violation of the FHA.

17.  The Plaintiff filed an administrative complaint with the United States Department of Housing and Urban Development (hereinafter "HUD") regarding those violations.  The Plaintiff entered into a Conciliation Agreement dated the 2nd day of April, 2009 settling that HUD action. Pursuant to that Conciliation Agreement, the Respondents to that Agreement denied discrimination against the Plaintiff.  The existence of that proceeding indicates that the

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

Defendant Lott was aware of his obligation to not discriminate against disabled persons and is obligated to grant reasonable accommodations for service animals at least as early as the 23rd day of June, 2009, which was the date that Defendant Kent Lott executed the Conciliation Agreement in that HUD proceeding.  Furthermore, the Defendant Lott's conduct, as described below, constitutes both a material breach of the Conciliation Agreement and a statutory violation of the FHA, as provided by Paragraph 8 of said Conciliation Agreement.

18.   Subsequent to the settlement of the above-described action, the Plaintiff received a complaint from A.M., who is "handicapped", as that term is defined at 42 U.S.C. §3602(h) (the words "handicap" and "disability" are used interchangeably herein).  As a result of her disability, A.M. requires the use of a service animal.

19.   A.M. had entered into a Lease Agreement with the Defendant Bonneville on or about the 9th day of March, 2012 and began residing at the Subject Property pursuant to said Lease Agreement.  The Defendant Doe told A.M. that in addition to the base rent for her rental unit of $380.00 per month, she is also required to pay a $25.00 per month extra pet fee for her service animal for total monthly rental amount of $405.00, which A.M. paid to the Defendants.  At that time, A.M. was unaware that the FHA prohibits the charging of extra fees for service animals.

20.   Several months after A.M. began residing at the Subject Property, she told her treating physician that she was planning to relocate because she could not afford to pay the extra fee for her service animal.  A.M.'s treating physician told her that she could not be charged an extra fee for her service animal and he provided her with a written prescription for her a service animal dated the 27th day of December, 2012, which A.M. provided to the Defendant Doe along with her request for a reasonable accommodation to no longer be charged the pet fee for her service animal.  The Defendant Doe told A.M. that he has attended fair housing training, that he

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

is required to treat pets and service animals the same, and that A.M. is still required to pay the $25.00 per month extra fee for her service animal.

21.  A.M. has paid the $25.00 per month extra fee for her service animal since she began residing at the Subject Property.

22.  The Defendants' conduct with regards to A.M., as described above, violates the FHA and constitutes negligent training or supervision by the Defendants.

23.  On or about the 24th day of January, 2013, A.M. filed a complaint with the Plaintiff regarding the discriminatory and negligent treatment to which she was subjected by the Defendants.  The Plaintiff counseled A.M. with regards to her fair housing rights and began investigating her allegations and the Defendants' rental practices.

24.  As part of its investigation, the Plaintiff conducted a telephonic test of the Defendants on or about the 3rd day of April, 2013.  During the course of the test, the Plaintiff's tester inquired of the Defendant Doe as to the availability of housing at the Subject Property and the terms of the rental.  The Defendant Doe told the Plaintiff's tester that the Defendants have several rental units available.  The Plaintiff's tester stated that she has a service animal prescribed by her doctor for her disability and the Defendant Doe told the Plaintiff's tester that the Defendants charge a $50.00 per month extra fee for the animal.  The Plaintiff's tester asked the Defendant Doe if the Defendants would waive the fee due to the fact that the animal is a service animal and the Defendant Doe stated that they would not waive the fee.  The Defendant Doe told the Plaintiff's tester that there are tenants residing at the Subject Property who have service animals and that they are charged a $50.00 per month extra fee for their service animals.

25.  The Plaintiff sent a letter to the Defendant Doe and the Defendant Bonneville dated the 22nd day of May, 2013 informing the Defendants that their policy of imposing charges for

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

7

service animals violates the FHA and that their failure to change that policy would result in the filing of an administrative complaint with HUD.

26.   The Plaintiff received a letter from the Defendant Kent Lott dated the 1st day of June, 2013 indicating that effective the 1st day of June, 2013, the Defendant Bonneville will no longer charge a fee for service animals.

27.   For the month of July 2013, the Defendant continued to charge A.M. a $25.00 per month extra fee for her service animal.

28.   The Plaintiff filed an administrative complaint with HUD dated the 3rd day of December, 2013.  That complaint remained pending with HUD until the 12th day of September, 2014, when it was withdrawn from HUD in order to pursue litigation of these matters in court. A.M. filed an administrative complaint with HUD dated the 17th day of December, 2013.  That action currently remains pending with HUD.

29.   A.M. submitted a second complaint to the Plaintiff on or about the 7th day of September, 2014, reporting that the Defendant Kent Lott has interfered with her right to fair housing by telling her that if she does not drop her fair housing complaint, he will have to tear down the Subject Property, and that she and the other tenants will be left with nowhere to reside.

30.   As the result of the Defendants' discriminatory and negligent conduct, the Plaintiff has diverted its resources, it lost economic opportunity, and its mission has been frustrated.

31.   As the result of the Defendants' discriminatory and negligent conduct, A.M. has suffered out-of-pocket expenses, embarrassment, humiliation, deprivation of her civil rights, pain and suffering, inconvenience, and emotional and physical suffering.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF
THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

32.  The Plaintiff realleges and herein incorporates by reference the allegations set forth
in Paragraphs 1-31 above.

33.  The Defendants have discriminated in the sale or rental of, and otherwise made
unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

34.  The Defendants have discriminated in the terms, conditions and privileges of the sale
or rental of a dwelling, and the services and facilities in connection therewith, on the basis of
"handicap".  42 U.S.C. §3604(f)(2).

35.  The Defendants have refused to make reasonable accommodations in rules, policies,
practices, or services, when such accommodations may be necessary to afford equal opportunity
to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).

36.  The Defendants made, printed or published a notice or statement with respect to the
sale or rental of a dwelling that indicates a preference, limitation or discrimination based on
"handicap".  42 U.S.C. §3604(c).

37.  Such conduct is willful and intentional, and exhibits reckless or callous indifference
for the rights of the victims.

COUNT TWO—INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF
THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

38.  The Plaintiff realleges and herein incorporates by reference the allegations set forth
in Paragraphs 1-37 above.

39.  The Defendants have engaged in interference in the exercise or enjoyment of rights
granted the victims by 42 U.S.C. §§3603 and 3604.  42 U.S.C. §3617.

VERIFIED COMPLAINT AND               9
DEMAND FOR JURY TRIAL

40.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

COUNT THREE—NEGLIGENCE

41.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-40 above.

42.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to A.M.

43.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff and to A.M.

44.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to A.M. by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq. and its implementing regulations.

DAMAGES

45.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-44 above.

46.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

47.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

48. The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $20,112.20, which continue to accrue.

49. The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $19,866.51.

50. The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

51. The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $36,164.92.

52. In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, including but not limited to A.M.

53. The Plaintiff and the above-named victim are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

54. All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

55. A Victims' Compensation Fund should be established in an amount to be determined at trial to adequately compensate identified and as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

11

a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $18.06 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday. The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

Network Corp. (LINC), 1878 Overland Road, Boise, Idaho 83705; (2) DisAbility Rights Idaho, 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 505 North Main Street, Moscow, Idaho 83843; and (3) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.   Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.   Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendants shall have fourteen (14) days to review the declaration

and to provide to the Plaintiff any documents or information that it believes
may refute the claim.

h.  After receiving the Defendants' refutation, if any, the Plaintiff shall submit its
final recommendations to the Court for approval, together with a copy of the
declarations and any additional information submitted by the Defendants.
When the Court issues an order approving or changing the Plaintiff's proposed
distribution of funds for aggrieved persons, the Defendants shall, within ten
(10) days of the Court's order, deliver to the Plaintiff checks payable to the
aggrieved persons in the amounts approved by the Court.  In no event shall the
aggregate of all such checks exceed the sum of the Victims' Compensation
Fund, including accrued interest and after deducting compensation to the
Plaintiff as described above.  No aggrieved persons shall be paid until he or she
has executed and delivered to counsel for the Plaintiff a signed and notarized
statement releasing the Defendants from all claims related to the subject
property.

i.  In the event that less than the total amount in the fund including interest is
distributed to aggrieved persons, the remaining funds shall be submitted to an
education fund to be drawn upon by the Plaintiff and other non-profit
organizations for purposes of educating housing consumers and providers on
the requirements of the Fair Housing Act.  Said education fund shall be
administered by the Plaintiff.

VERIFIED COMPLAINT AND          14
DEMAND FOR JURY TRIAL

j.   The Defendants shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

56.  The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined at trial.

57.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

58.  The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by the FHA and court rule.

59.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council, Inc. prays that the Court enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $20,112.20, which continue to accrue;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

15

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $19,866.51;

D.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $36,164.92;

F.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined at trial by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 55 above;

G.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined at trial;

H.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

K.  That the Court order any further and additional relief as the interests of justice may require.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

16

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a

trial by jury on all issues.

DATED this ___8th___ day of _____October_____, 2014.


_____

KEN NAGY
Attorney for Plaintiff


ZOE ANN OLSON, being first duly sworn on her oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff
herein, that I have read the foregoing document, know well the contents thereof, and that the
facts therein stated are true to the best of my knowledge and belief.


_____/s/_____

ZOE ANN OLSON


STATE OF I D A H O   )
                     : ss
County of __Idaho____ )

I, ___Carrie House_____, a Notary Public for said
state, does hereby certify that on the __8th__ day of ____October_____, 2014,
personally appeared before me ZOE ANN OLSON, Executive Director of the Intermountain Fair
Housing Council, Inc. who, being by me first duly sworn, declared that he signed the foregoing
document as such, and that the statements therein contained are true and accurate as she verily
believes.

SEAL                            ___/s/ (Carrie House)_____

CARRIE HOUSE                    _____
NOTARY PUBLIC                   Notary Public in and for the State of __Idaho___
STATE OF IDAHO                  Residing at: __ADA_____
                                My commission expires: ___3/1/19_____

VERIFIED COMPLAINT AND          17
DEMAND FOR JURY TRIAL
                                               **KEN NAGY**
                                            **Attorney at Law**
                                            **Lewiston, Idaho**

## APPENDIX A:

### PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff IFHC has incurred significant pre-litigation expenses as a result of the Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff IFHC has sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint

---

[1]*See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

preparation, counseling and other activities with regards to this matter.  As a result of these activities, it has incurred expenses as follows:

    a.  Counseling Costs:                                      $51.82

    b.  Investigation Costs:                              $3,761.97

    c.  Educational Efforts:                             $8,174.46

    d.  <u>Cost of Deferred Actions:                         $8,123.95</u>

             Total Past Diversion of Resources:  $20,112.20

Further litigation of these matters will result in an increase in the Plaintiff IFHC's diversion of resources, as well as other damages.

## 2.  Future Diversion of Resources

The Plaintiff IFHC has an affirmative duty to ensure the Defendants' ongoing compliance with the FHA, with regards to both the subject property as well as any future developments in which the Defendants may participate.  Such monitoring activities include site visits, training of Defendants and their employees and agents, counseling of victims, and testing.

The Plaintiff IFHC expects to incur the following expenses as a result of the current violations:

    a. Future Advertising Costs:                   $6,300.00

    b. Cost of Future Training:                    $3,390.57

    c. <u>Costs of Future Monitoring/Testing:            $10,175.94</u>

             Total Future Diversion of Resources:  $19,866.51

## 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff IFHC to divert limited resources and manpower

away from grant-writing activities.  The Plaintiff IFHC could reasonably expect to have obtained

funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so

diverted due to the Defendants' actions

    a.  Loss of Funding:                              $1,000.00

**4.  Frustration of Mission**

The investigation of the subject of this complaint, the counseling and training provided to

the community, and the preparation of the administrative complaint have caused the Plaintiff

IFHC to divert significant resources toward this proceeding and has undermined the work of

furthering fair housing in the state of Idaho.

As a direct result of the Defendants' discriminatory actions, the Plaintiff IFHC's mission

of furthering fair housing has been significantly frustrated, and the Plaintiff IFHC has had to

devote, and will continue to devote, additional resources in order to counteract the past and

ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier

to non-discriminatory housing, thereby undermining the mission of the Plaintiff IFHC in

guaranteeing fair housing to all residents of the state.  The Plaintiff IFHC has determined that it

will be necessary to educate housing consumers regarding fair housing requirements in order to

counteract the effects of the Defendants' failure to comply with the FHA.

The Plaintiff IFHC measures the damage to its frustration as the total monetary damages

that the Defendants' actions have cost to correct, including lost funding opportunities.

    a.  Frustration of Mission                         $36,164.92

VERIFIED COMPLAINT AND        20
DEMAND FOR JURY TRIAL

## **TOTAL DAMAGES**

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

1. Out-of Pocket Expenses and Past Diversion of Resources:      $20,112.20

2. Future Diversion of Resources:      $19,866.51

3.  Lost Economic Opportunity:      $1,000.00

4.  Frustration of Mission:      $36,164.92

Total Damages:      $77,143.63

VERIFIED COMPLAINT AND          21
DEMAND FOR JURY TRIAL

# APPENDIX B:

## CALCULATION OF VICTIMS' COMPENSATION FUND

## I. INTRODUCTION

In addition to the damages incurred by the Plaintiff IFHC, a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002

VERIFIED COMPLAINT AND                     22
DEMAND FOR JURY TRIAL

establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated.  The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are owned and managed by the Defendants is currently unknown.

B.  The number of months that the Defendants have managed property that is subject to the requirements of the Fair Housing Act, as of the filing of this complaint, is currently unknown.

C.  On average, each of the units could be expected to be rented to a new tenant who is disabled every twelve months.

D.  The U.S. Census Bureau's American Community Survey for 2008 indicates that, for the state of Idaho, persons with a disability comprised 12.0% of the population.

E.  The amount of damages awarded to victims of disability discrimination in violation of the Fair Housing Act in administrative proceedings before the United States Department of Housing and Urban Development has been $10,000.00 or more (this is a conservative estimate of the amount of damages that should be awarded to a victim of such discrimination, and is therefore not intended in any way to be a statement of the damages that are reasonably owing to individual victims, which instead must be determined on a case by case basis with full consideration of the facts of each such case).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

F.  The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

G.  The Plaintiff IFHC should be compensated at its hourly overhead rate of $18.06 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of at least $100.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

1.  Step One: Estimated Compensation for Victims.  The amount of funds that can reasonably be expected to be necessary to compensate victims of discrimination by the above-named Defendants, as they become identified, should be calculated as follows:

First, the total number of months that the above-named Defendants have owned or managed the Subject Property is divided by the estimated average duration of tenancy in months, and multiplied by the total number of units at the subject property.  This represents the total number of tenants or applicants at the subject property over the relevant time period.

Second, the above product is multiplied by 12.0% to determine the total number of victims who faced discrimination based on disability.

Third, the total number of victims is multiplied by an estimated damage award to each victim (which is $2,500), arriving at the total amount necessary to compensate victims.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

2.  <u>Step Two: Estimated Compensation for the Fund Administrator.</u>  The amount of funds that can reasonably be expected to be necessary to compensate the fund administrator for work performed in administering the Victim's Compensation Fund should be calculated as follows:

The total number of victims is multiplied by the number of hours necessary to administer the fund per victim (which is 3), times the Plaintiff's operational rate (which is $47.57 per hour).

3.  <u>Step Three</u>.  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator as out-of-pocket expenses in administering the Victims' Compensation Fund should be calculated as follows:

The total number of victims is multiplied by the amount that the Plaintiff can be expected to incur in out-of-pocket costs in identifying and compensating each victim.

4.  <u>Step Four</u>.  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three, as set forth above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**